UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | |
|---|---|
| DAWN MARIE ADAMS, ) | |
| ) | |
| Appellant, ) | |
| ) | |
| vs. ) | Cause No. 2:12-cv-130-WTL-WGH |
| ) | |
| JAMES GREGORY ADAMS, ) | |
| ) | |
| Appellee. ) | |

### ENTRY ON JUDICIAL REVIEW

Appellant Dawn Marie Adams seeks the reversal of a decision by the Bankruptcy Court disallowing her claim against the estate of debtor-Appellee James Gregory Adams. For the reasons set forth below, the decision of the Bankruptcy Court is **AFFIRMED**.

### I.      STANDARD

Under 28 U.S.C. § 158(a), the district courts of the United States have jurisdiction to hear appeals from final judgments, orders, and decrees of the bankruptcy courts. On appeal from the bankruptcy court, the district court may affirm, modify, or reverse a bankruptcy judge's judgment, order, or decree, or remand the case for further proceedings. Fed. R. Bankr. P. 8013. The district court conducts a de novo review of questions of law, *e.g.*, *Mungo v. Taylor*, 355 F.3d 969, 974 (7th Cir. 2004), but findings of fact are not set aside unless clearly erroneous and "due regard [must] be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses." Fed. R. Bankr. P. 8013.  A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. *E.g.*, *Kovacs v. United States*, 614 F.3d 666, 672 (7th Cir. 2010).

## II. BACKGROUND

This case arises out the denial of a claim in bankruptcy; that claim has its roots in a series of divorce and contempt proceedings before Georgia state courts. The relevant facts follow.

Appellant Dawn Marie Adams ("Ms. Adams") and Appellee James Gregory Adams ("Mr. Adams"), once married, were divorced by order of the Superior Court of Jasper County, Georgia, on November 30, 2004. The divorce decree provided that Mr. Adams was to pay alimony to Ms. Adams in the total amount of $139,750.00, payable over 72 months with interest at the rate of 6% per annum. On March 10, 2006, Ms. Adams and Mr. Adams submitted to the Jasper County Court a proposed modification of the divorce decree reflecting payments that had been made by Mr. Adams to Ms. Adams since the divorce. The modification reduced the total alimony obligation to $61,295.00, payable over 36 months with interest at the rate of 12.95% per annum. Payment of alimony was further secured by a Note and Security Agreement executed by Mr. Adams in favor of Ms. Adams, granting her a security interest in certain collateral. The modification was approved by order of the Jasper County Superior Court on April 18, 2006.

Mr. Adams failed to regularly make payments as required under the Jasper County modification order, and on March 22, 2007, Ms. Adams sued Mr. Adams for breach of the Note and Security Agreement. Ms. Adams brought suit in Upson County, Georgia, as Mr. Adams had relocated to that county. By order dated June 27, 2008, Ms. Adams's claim against Mr. Adams was reduced to judgment. Among other items, the judgment included $66,591.48 in principal and interest due and payable under the note and $8,000.00 in attorney's fees.

While the case in Upson County was pending, Mr. Adams ceased making payments to Ms. Adams entirely. Ms. Adams thus sought relief pursuant to the contempt powers of the rendering divorce court; on November 17, 2008, she filed a motion for contempt against Mr.

Adams in Jasper County for failure to pay the monthly alimony payments due under the Court's divorce decree. Ms. Adams sought judgment for the then-accrued arrearage under the alimony obligations, among other relief. After a hearing, the Jasper County Court ordered Mr. Adams to pay the accrued arrearage or find himself incarcerated for willful contempt of court. In response, Mr. Adams paid Ms. Adams a sum total of $51,580.79, of which $41,096.39 was attributable to the alimony arrearage. However, because the Jasper County contempt judgment was for accrued arrearage only, while the Upson County judgment was for the total of all debt obligations due by Mr. Adams to Ms. Adams, a balance remained unpaid on the Upson County judgment.

By order entered October 28, 2009, the Circuit Court for Putnam County, Indiana, registered the Upson County judgment. Following this entry, Mr. Adams sought relief from the Upson County judgment in the Upson County Superior Court in Georgia. Mr. Adams contended that the Upson County judgment had been fully satisfied by the payment he made in compliance with the Jasper County contempt order. Ms. Adams objected. By order dated February 19, 2010, the Upson County Court rejected Mr. Adams's request for relief and found that Mr. Adams owed Ms. Adams a total balance of $69,107.31.[1]

Mr. Adams did not pay Ms. Adams pursuant to the order, and Ms. Adams filed another contempt motion, this time in Upson County. The Upson County Superior Court found Mr. Adams in willful contempt of court and ordered Mr. Adams to pay Ms. Adams a sum of $74,612.25, plus attorney's fees, before April 1, 2011. If Mr. Adams failed to do so, the court ordered him to be jailed until he complied.

Mr. Adams did not appeal, nor did he pay the judgment. Instead, on April 15, 2011, he filed for Chapter 13 bankruptcy in the Southern District of Indiana. Ms. Adams filed a proof of

---

[1] This figure includes amounts owing for reasons other than alimony.

claim in the amount of $74,612.25, but Mr. Adams objected on the grounds that the claim had been paid. The validity of the claim, as well as other issues, was heard before the Honorable Frank J. Otte of the United States Bankruptcy Court on March 15, 2012.[2]

At the March hearing, Ms. Adams argued that the Bankruptcy Court was without jurisdiction to review the state court judgments. For his part, Mr. Adams submitted copies of payments made to Ms. Adams since the divorce of the parties, with the dates ranging from shortly after the entry of the final divorce decree until payment of the February 17, 2009, contempt order in Jasper County. It was and is undisputed that Mr. Adams has made no payments to Ms. Adams since that date.

Some of the payments Mr. Adams testified to were made prior to the March 10, 2006, divorce modification order. When pressed on cross examination about whether he had agreed to the credits and the new balance set out in the modification, Mr. Adams contended that his agreement was procured by duress and that that the credit he received did not reflect the full amount of his payments. Mr. Adams argued that if he had been given credit for payments made before and after the modification in March 2006, he would owe nothing to Ms. Adams. In fact, by Mr. Adams's reckoning, he overpaid the claim.

At the conclusion of the hearing, the Bankruptcy Court took the matter under advisement and set the remaining issues for trial on April 12, 2012. At the April 12, 2012, hearing, Mr. Adams again objected to the claim and sought sanctions against Ms. Adams and her counsel. Judge Otte ruled as follows:

> There's no question . . . that there's been a lot of difficulty here in this case, and what went on in Georgia does not look good, from what I see in the mirror here,

---

[2] On February 28, 2012, Ms. Adams filed a motion for partial summary judgment on the validity of her claim. The Court did not rule on the motion before the March 15, 2012, hearing, but took up the issue in substance at the hearing. The motion was denied on April 26, 2012.

> but I'm just going to aggravate this situation with sanctions. It isn't going to solve any problem.
>
> I'm going to solve the problem by letting the Chapter 13 continue, and denying the claim, because I don't know whether the claim has really totally been paid in full, but it's no $69,000 claim. . . .
>
> I've never seen this Ann Marie – Dawn Marie Adams, and her claim is denied. I note that on Exhibit 21 of the last hearing that we had for hours when I was here last month, it is a money order for $51,000, and after you take all those exhibits and add them up, what's submitted here was well over $200,000.
>
> And I couldn't quite determine whether that included the $51,000 or not, but there have been thousands – over – there's been over $250,000 paid in this case, no question about it, for a marriage that was about 28 months.

Transcript of April 12, 2012, Hearing at 16:20-17:15, No. 11. The Judge denied the claim and approved confirmation of the plan. Ms. Adams now appeals from the denial of her claim.

### III.     DISCUSSION

On appeal to this Court, Ms. Adams argues that the Bankruptcy Court erred when it denied her claim. According to Ms. Adams, in denying her claim, the Bankruptcy Court improperly permitted Mr. Adams to "relitigate" the state court proceedings, in violation of the *Rooker-Feldman* doctrine, as well as principles of collateral estoppel and res judicata.

As courts of equity, bankruptcy courts have "full power to inquire into the validity of any claim asserted against the estate and to disallow it if it is asserted to be without lawful existence. . . . And the mere fact that a claim has been reduced to judgment does not prevent such an inquiry." *Pepper v. Litton*, 308 U.S. 295, 304-05 (1939); *In re Witte*, 841 F.2d 804, 808 (7th Cir. 1988) (quoting and applying *Pepper*); *Bulic v. Bulic*, 1992 WL 503534 at *5 (S.D. Ind. 1992) ("A bankruptcy court may use its equitable powers to avoid unjust enrichment, even if the enrichment may come from enforcing a state court judgment."). Accordingly, it was not error for the bankruptcy judge to consider the full history of payments and agreements between Ms.

Adams and Mr. Adams, even though that inquiry included events occurring before Ms. Adams secured the Upson County and Jasper County judgments.

Ms. Adams also argues that, regardless of whether errors of law occurred, she is entitled to a reversal because the "factual analysis underlying the decision of the Bankruptcy Court was fatally flawed." According to Ms. Adams, the judge's finding that her claim had been satisfied is not supported by the facts and should be reversed.

In allowing or disallowing a claim, a bankruptcy judge must be ever mindful of properly allocating the burden of proof. The ultimate burden of proof lies with the claimant, but the proof of claim is prima facie evidence of validity and amount. *In re Allegheny Int'l, Inc.*, 954 F.2d 167, 174-75 (3rd Cir. 1992), *cited in Matter of Carlson*, 126 F.3d 915, 921-22 (7th Cir. 1997). The burden of going forward then shifts to the objecting party, who must bring forth evidence equal in probative force; only then does the burden revert to the claimant to prove the validity of the claim by a preponderance of the evidence. *Allegheny*, 954 F.2d at 174-75.

In the instant case, the Bankruptcy Judge denied the claim, ruling that he didn't "know whether the claim has really totally been paid in full," but finding that "it's no $69,000 claim." In this way, the Bankruptcy Judge found that Mr. Adams had brought forth sufficient evidence to undermine the amount of Ms. Adams's claim. Based on the evidence adduced at the hearing, there is no clear factual error in this conclusion.

Following Mr. Adams's showing, the onus was then on Ms. Adams to prove the amount of her claim by a preponderance of the evidence. However, as the Judge noted, Ms. Adams did not testify. Instead, counsel for Ms. Adams indicated at the March 15, 2012, hearing that Ms. Adams would not be testifying, as she was "relying on the record . . . and cross-examination." Transcript of March 15, 2012, Hearing at 54:11-18, No. 10. The "record" consists of the state

court judgments, Transcript of April 12, 2012, Hearing at 13:3, No. 11, and on cross-examination of Mr. Adams, counsel for Ms. Adams touched (confusingly) on the payments, but focused on the ownership and management of Truk Wurks, LLC, of which Mr. Adams was alleged to be the manager. Transcript of March 15, 2012, Hearing at 20:12- 23:14; 89:11-96:11, No. 10. Thus, the only evidence asserted by Ms. Adams in support of her claim was the Georgia judgments and a generally confusing cross-examination of Mr. Adams.[3] As described above, the Bankruptcy Court was within its power to inquire into the payments predating the Georgia judgments; it was not an error of law for the Bankruptcy Court to do so. Likewise, given the record before him, there was no error in the judge's finding that Ms. Adams had not proved her claim.[4]

### IV. CONCLUSION

The decision of the Bankruptcy Court is **AFFIRMED**.

SO ORDERED: 02/27/2013

*William T. Lawrence*

Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana

Copies to all counsel of record via electronic communication.

---

[3] On appeal, Ms. Adams takes issue with the accuracy of the "summary of damages" submitted by Mr. Adams, arguing, for example, that the amortization is based on an interest rate of 6% when the March 10, 2006, modification order set the interest rate at 12.95%. However interesting these arguments may be, they are raised for the first time on appeal, and the Court need not consider them. *E.g.*, *Coleman v. Hardy*, 690 F.3d 811, 818 ("It is well-established that arguments raised for the first time on appeal are waived.").

[4] It is clear from the forgoing that, despite Ms. Adams's counsel's characterization, the Court does not view the decision of the Bankruptcy Court to be a product of the "seat of the judge's pants" nor his "foibles," and counsel would do well to show greater professionalism in his advocacy before this Court.